IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRIGHTHARBOUR CONSULTING,
LLC, et al.,

    Plaintiffs,

     v.

DOCUCONSULTING, LLC, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-4050-TWT

**OPINION AND ORDER**

In this case, the Plaintiffs bring claims for copyright infringement as well as claims relating to the break up of a limited liability company with the Defendants. The Defendants move for summary judgment on the Plaintiffs' copyright claims because there is no evidence that the Defendants have impermissibly used the allegedly copyrighted software. The Plaintiffs concede there has been no infringing use, but they nevertheless contend they are entitled to injunctive relief on the use of the copyrighted software and to summary judgment on the issue of copyright ownership. However, the Plaintiffs' request for injunctive relief is improper given their acknowledgment of non-infringement, and the Defendants' motion should be granted.

Additionally, issues of fact prevent the Court from determining copyright ownership here, and the Plaintiffs' motion should be denied.

## I. Background

Plaintiffs Brightharbour Consulting, LLC, 3Lins, LLC, Alden D. Kent, and Hsi-Ming Lin bring claims against Defendants Docuconsulting, LLC, Pivot, LLC, Broadwater, LLC, Richard Lee, and Daniel Haggerty. Although many of the Plaintiffs' claims surround the breaking up of the business arrangement between the Plaintiffs and the Defendants, the motions before the Court focus solely on copyright issues.

The copyrighted software was created when the Plaintiffs were managers and members of Docuconsulting, LLC. Pursuant to the Operating Agreement the parties entered into, Plaintiffs Kent and Lin and Defendants Lee and Haggerty were managers of Docuconsulting, while Plaintiffs Brightharbour Consulting, LLC and 3Lins, LLC along with Defendants Pivot, LLC and Broadwater, LLC were members of the company. (See Am. Compl. Ex. A).

Docuconsulting produced four pieces of software at issue here. The first was called ExPRS Manual Correspondence ("ExPRS"), and it arose out of Docuconsulting's contracts with Liberty Mutual Insurance Company. Liberty Mutual

engaged Docuconsulting to modify *Documaker* software – a program owned and licensed by Oracle Corporation – in order to improve Liberty Mutual's correspondence system. (See Lee Decl. ¶¶ 7, 12). Thus, pursuant to a Master Services Agreement, Docuconsulting modified the *Documaker* code to Liberty Mutual's specifications and granted Liberty Mutual a perpetual license to use the code. (Id. ¶ 9). Plaintiff Kent argues that he was the technical programmer who developed the customized code for the ExPRS Manual Correspondence program.

The other three pieces of software are different versions of a program called "Librarian" that Docuconsulting developed concurrently with the Liberty Mutual project. The Librarian software consists of Librarian, Librarian 1.2, and Librarian 2011, and it is used as a system to help manage forms. Docuconsulting provided the Librarian software to five customers: Liberty Mutual, AMICA Mutual Insurance Company, Aspen Specialty Insurance Management, Inc., GuideOne Mutual Insurance Company, and Swett & Crawford Group, Inc. Each company was granted a perpetual license to use the software. (See Lee Decl. ¶¶ 17-18, 20-21). Plaintiffs Kent and Lin argue that they are the authors of the Librarian software.

The Defendants argue that Counts I-IV of the Amended Complaint, which assert claims for copyright infringement, should be dismissed because there is no evidence of actual infringement. The Plaintiffs do not contend there is evidence of

actual infringement, but they argue they are entitled to injunctive relief protecting their copyrighted material. They further move for summary judgment on the ownership of the copyrights to the ExPRS and the Librarian programs.

## II.  Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986).

## III.  Discussion

### A.     The Defendants' Motion for Partial Summary Judgment

The Defendants argue that the Plaintiffs' four claims for copyright infringement must fail because the Defendants have not used the allegedly copyrighted software outside of the licensing agreements Docuconsulting signed while the Plaintiffs were still with Docuconsulting. The Plaintiffs agree that the copyrighted software has not been used outside the license agreements with Liberty Mutual, AMICA, Aspen, GuideOne, and Swett. However, the Plaintiffs still seek injunctive relief with respect to their infringement claims.

To demonstrate copyright infringement, the copyright holder must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." BUC Intern. Corp. v. International Yacht Council Ltd., 489 F.3d 1129, 1142 (11th Cir. 2007) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 362 (1991)). Here, the Plaintiffs essentially concede that the second element of the Feist test is not met. In the second Feist element, "the word copying is shorthand for the infringing of any of the copyright owner's five exclusive rights described in 17 U.S.C. § 106." Getty Images, Inc. v. Advernet, Inc., 797 F. Supp. 2d 399, 413 (S.D.N.Y. 2011) (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 117

(2d. Cir. 2010)). Those exclusive rights allow the owner to: (1) reproduce the copyrighted work; (2) prepare derivative works based upon the copyrighted work; (3) distribute copies of the copyrighted work; (4) perform the work publicly; and (5) display the copyrighted work. 17 U.S.C. § 106. Because the Plaintiffs concede that the Defendants have not used the ExPRS or Librarian software outside of the license agreements with its customers that were made while the Plaintiffs were still a part of Docuconsulting, the Defendants have not infringed on the Plaintiffs' exclusive rights – assuming that the Plaintiffs are in fact the owners of the copyrights. Further, because there is no actual infringement, the Plaintiffs' claims for contributory and vicarious infringement must also be denied. See Coach, Inc. v. Swap Shot, Inc., 916 F. Supp. 2d 1271, 1281 (11th Cir. 2012) (noting that contributory infringement rests on actual infringing activity); id. at 1282 (tying vicarious liability to actual direct infringement).

The Plaintiffs nevertheless claim that they are entitled to injunctive relief to prevent the Defendants' potential future use of the copyrighted software. Even assuming that the Plaintiffs are the owners of the copyrights, injunctive relief is not appropriate here. To obtain injunctive relief, the Plaintiffs need to show that: (1) they have suffered an irreparable injury; (2) that remedies at law are inadequate to compensate that injury; (3) that the balance of hardships warrants a remedy in equity in favor of the Plaintiffs; and (4) that the public interest would not be disserved by a

permanent injunction. Letterese & Assocs., Inc. v. World Institute of Scientology Enters., 533 F.3d 1287, 1323 (11th Cir. 2008).

Here, the Plaintiffs concede that they have not suffered an injury – the copyrights have not been infringed. Instead, they are arguing for a prospective injunction to prevent the Defendants from infringing upon a copyright that there is no evidence the Defendants intend to infringe. But "a prospective injunction is entered only on the basis of current, ongoing conduct that threatens future harm." Id. at 1323 n.41. Further, the Defendants have shown that the ExPRS program was developed specifically for Liberty Mutual and it would be impractical for the copyrighted program to be used elsewhere. Likewise, problems with the Librarian software led the Defendants to stop using the software. Indeed, Docuconsulting stopped using Librarian in 2011, before the Plaintiffs left the company. (See Lee Dep. at 36; Lee Decl. ¶ 32). Accordingly, because the Plaintiffs concede there has been no infringing of the copyrighted software, the Defendants' motion for partial summary judgment on Counts I-IV of the Amended Complaint should be granted.

### B. The Plaintiffs' Motion for Partial Summary Judgment

The Plaintiffs seek summary judgment on the issue of copyright ownership. Specifically, they seek a ruling that Kent is the owner of the copyright registration covering the ExPRS Manual Correspondence software and a ruling that Kent and Lin

are the owners of the three copyright registrations over the Librarian software. They argue they are the authors of the software and entitled to ownership under 17 U.S.C. §201(a). The Defendants argue that Lin and Kent were employees of Docuconsulting when the software was developed so Docuconsulting is the owner of the copyright under the works for hire doctrine. See 17 U.S.C. § 201(b). Alternatively, the Defendants argue that Lee and Haggerty were joint authors of the Librarian and ExPRS programs.

In determining whether a copyrighted work was made by an employee, courts should look to the general common law of agency. Community for Creative Non-Violence v. Reid, 490 U.S. 730, 741 (1989).

> Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and the tools; the location of the work, the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id. at 751-52 (citing Restatement of Agency § 220(2)). Courts should also consider "the hiring party's right to control the manner and means by which the product is accomplished." Id.

Here, the Defendants have offered sufficient evidence of most of the above factors to create a question of fact as to the actual owner of the copyrights at issue. First, Docuconsulting, Lee, and Haggerty had the right to control the manner that the ExPRS and Librarian programs were made. Indeed, the codes were developed based on the clients' specifications and needs. (See Lee Decl. ¶¶ 20-21). The Plaintiffs counter that because Docuconsulting's Operating Agreement provided that Lin and Kent, along with Lee and Haggerty, were managers whose unanimity was required for any decision, then Lin and Kent had control over the manner the projects were developed. (See [Doc. 133-3], at §§ 1.1; Art. VIII). Next, the Plaintiffs' skills in programming weigh in their favor. The Defendants admit that the Plaintiffs were hired "for their vast knowledge of form maker software programs" and that their work was "highly specialized." (Defs.' Resp. in Opp'n. to Pls.' Mot. for Partial Summ. J., at 12).

There are factual disputes about most of the remaining Reid factors. The Defendants argue that Kent and Lin's work was performed at Docuconsulting's office, first in Lee's basement and then in a leased space, but the Plaintiffs argue they developed the software from their home offices. (See Lee Decl. ¶ 48; Kent Decl. ¶ 16; Lin Decl. ¶ 15). Similarly, Docuconsulting argues it assigned work to Kent and Lin, while Kent and Lin argue that the managers together made informal agreements at meetings about who should take which projects. (See Lee Decl. ¶ 51; Kent Decl. ¶ 20;

Lin Decl. ¶ 19). Likewise, the Plaintiffs argue that they were not bound by Docuconsulting in terms of the duration of their work, but the Defendants argue that the Consent Action, which modified Docuconsulting's Operating Agreement, provided for regular work times for the Plaintiffs. The Plaintiffs contend that the Consent Action did not take effect until after the copyrighted programs were created. (See Lee Decl. ¶ 27). The Plaintiffs also argue that their compensation was tied to their roles as members of the company, not to their work products. (Kent Decl. ¶¶ 25-28; Lin Decl. ¶¶ 24, 26). But the Defendants again contend that the Consent Action provided for the Plaintiffs to be compensated for the work they performed. (Lee Decl. ¶ 27). The parties agree that, as managers, Kent, Lin, Lee and Haggerty were all involved in the hiring and paying of assistants. Finally, the Plaintiffs do not dispute that Docuconsulting was in business and that creating Librarian and ExPRS was part of the Docuconsulting's regular business, but they argue that those facts are due little weight under the Reid analysis.

In Woods v. Resnick, 725 F. Supp. 2d 809 (W.D. Wis. 2010), the court concluded that an equal partner in a limited liability company was not an employee under the work-for-hire doctrine. Like Docuconsulting, the LLC in Woods required unanimous consent before any action could be taken. "In other words, the company does not have the ability to compel either owner to take action. Under this scenario,

there is no basis for finding that [the plaintiff] was an employee under the control of [the defendant]." Id. at 824. Here, in contrast, and despite their equal status as managers, the Defendants have provided evidence suggesting that Lee and Haggerty retained control over the Plaintiffs. The Defendants argue that Kent and Lin performed work at Docuconsulting's office, that Docuconsulting could assign them additional work, that the Plaintiffs were compensated based on their work, and that Lee and Haggerty were involved in developing the code itself. Accordingly, despite Docuconsulting's structure, the Defendants' evidence creates an issue of fact and the Plaintiffs' motion for partial summary judgment should be denied.

Further, the Defendants have provided evidence that Lee and Haggerty were joint authors of the ExPRS and Librarian programs. "The authors of a joint work are coowners of copyright in the work." M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1492 (11th Cir. 1990) (citing 17 U.S.C. § 201(a)). "A 'joint work' is defined as 'a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.'" Id. at 1492-93 (citing 17 U.S.C. § 101). The Defendants argue that Lee and Haggerty were involved in developing the architecture and specifics of the ExPRS code, that they were the main client contacts with Liberty Mutual, that they did some of the coding, and that they ensured the product met Liberty Mutual's specifications. (See

Lee Decl. ¶¶ 21-22; Haggerty Decl. ¶¶ 8-9). Likewise, for the Librarian projects, Haggerty and Lee developed some of the architecture and specifications for the program, designed individual modules for the individual clients using Librarian, they tested the programs, and they consulted with Kent and Lin to discuss ways to improve the product for end customers. (See Lee Decl. ¶¶ 43, 58; Haggerty Decl. ¶¶ 19, 30).

In Henderson v. Henderson, No. 3:05-cv-445-WHA, 2006 WL 3075711 (M.D. Ala. Oct. 30, 2006), the court ruled there was a question of fact about whether joint authors created the design of some duplexes. There was evidence that the plaintiff, who drew the final plans, received feedback from the defendant and incorporated that feedback into the final plans. The court concluded there was a question of fact about whether the defendant's suggestions were therefore part of the final plan. The court also noted there was a question of fact about whether the plaintiff and the defendant intended to be co-authors, because no evidence had been presented in that respect. Id. at *5.

Here, too, there is a question of fact about the extent of the joint effort. The Defendants' evidence, which is entitled to favorable inferences, suggests that the final versions of Librarian and ExPRS incorporated feedback from Lee and Haggerty and may have even included original software code developed by Lee and Haggerty. Although the Plaintiffs' evidence suggests otherwise, the Defendants' evidence

nevertheless creates an issue of fact capable of defeating summary judgment. Likewise, as in <u>Henderson</u>, there is incomplete evidence about whether the parties intended to be joint authors. Kent and Lin conclusorily state that they never intended Lee and Haggerty to be co-authors. (<u>See</u> Kent Decl. ¶¶ 44, 47; Lin Decl. ¶ 36). However, the programs were produced through a business structure comprised of Lee, Haggerty, Kent, and Lin, suggesting some understanding that they were collaborating. Accordingly, the Court concludes there is also a question of fact concerning whether Lee and Haggerty were joint authors of the copyrighted programs. The Plaintiffs' motion for partial summary judgment should be denied.

### IV.  Conclusion

For the reasons set forth above, the Defendants' Motion for Partial Summary Judgment [Doc. 123] is GRANTED, and the Plaintiffs' Motion for Partial Summary Judgment on Copyright Issues [Doc. 124] is DENIED.

SO ORDERED, this 11 day of April, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge